| | |
|---|---|
| **PERDUE FARMS INC.,**<br>31149 Ocean City Road<br>Salisbury, Maryland 21804<br><br>　　　　Plaintiff,<br><br>v.<br><br>**JULIE SU**, in her official capacity as Acting Secretary of the United States Department of Labor,<br><br>**PAMELA KULTGEN**, in her official capacity as an Administrative Law Judge of the United States Department of Labor,<br><br>**UNITED STATES DEPARTMENT OF LABOR**,<br><br>**THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR**,<br><br>*and*<br><br>**RUDY HOWELL**,<br><br>　　　　Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Perdue Farms Inc. ("Perdue"), by its undersigned attorneys, alleges and states as follows:

## **INTRODUCTION**

1.　　Perdue brings this action for declaratory relief under 28 U.S.C. §§ 2201-02, to enjoin the governmental Defendants from conducting unconstitutional administrative proceedings against Perdue currently pending in the U.S. Department of Labor ("DOL")'s Office of

Administrative Law Judges ("OALJ"), *Howell v. Perdue Farms Inc.*, No. 2022-FDA-00004 (the "Pending Administrative Proceedings"). Those proceedings are unconstitutional for multiple reasons, including, *inter alia*, deprivation of Perdue's constitutional right to a jury trial guaranteed by the Seventh Amendment as recently affirmed by the Supreme Court in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) ("*Jarkesy II*").

2.      The Pending Administrative Proceedings involve claims against Perdue for compensatory damages and other relief under the employee-protection (whistleblower) provisions of the Food Safety Modernization Act, 21 U.S.C. § 399d ("FSMA") currently pending before DOL Administrative Law Judge ("ALJ") Pamela Kultgen. An evidentiary hearing on the merits is scheduled to commence on June 23, 2025 to be tried by ALJ Kultgen without a jury and without the discovery and evidentiary protections available in an Article III court, subject to review by an appellate board and potential further determination by Acting Secretary of Labor Julie Su. The purpose of this action is to prevent DOL, its OALJ, Secretary Su, and ALJ Kultgen from continuing this unconstitutional proceeding against Perdue.

3.      The underlying facts concern a dispute between Perdue and one of its independent contractors, Rudy Howell, who owns and operates the Robert Miller poultry farm in Fairmont, North Carolina. Howell raised chickens for Perdue as an independent contractor under a written contract.    On February 11, 2021, Howell filed a complaint against Perdue with DOL's Occupational Safety and Health Administration ("OSHA"), alleging retaliation by Perdue in violation of the FSMA. *See* Declaration of Roger A. Colaizzi, Ex. 1, Notice of Whistleblower Complaint (Feb. 11, 2021) ("OSHA Complaint" or "OSHA Compl.").[1] Perdue vigorously denies Howell's claims, which he brought following years of complaints about the amount and system

---

[1] All Exhibits referenced in this Complaint are exhibits to the Colaizzi Declaration.

compensation he received from Perdue. During the height of the pandemic, he allowed and participated in filming and tours by a third-party animal rights group and non-governmental "public health advocates," and also allowed removal of two sick chickens, all of which violated the terms of his contract with Perdue, its programs for poultry welfare and bio-security, and its Covid-19 protocols. After learning of Howell's violations, Perdue took remedial action and terminated its contract with Howell. In the Pending Administrative Proceedings, Howell alleges that the remedial action taken by Perdue constitutes retaliation prohibited by FSMA's whistleblower protections.

4. Perdue is not asking this Court to litigate the merits of Howell's accusations. Instead, Perdue brings five constitutional challenges to the Pending Administrative Proceedings and seeks to halt any further proceedings therein.

5. *First*, in *Jarkesy II*, the Supreme Court held that trying legal claims administratively violates the Seventh Amendment constitutional right to a jury trial. *See Jarkesy II*, 144 S. Ct. at 2127-28. Here, Howell's claims are legal in nature, seeking compensatory damages including damages for emotional distress, business losses, backpay, and more. Howell's claims are thus close analogues to common-law wrongful-discharge actions for breach of contract and tort and are triable by jury under the Seventh Amendment. The Pending Administrative Proceedings deny Perdue its constitutional right to a jury trial.

6. *Second*, separate from the Seventh Amendment right to a jury trial, Howell's claims implicate private rights (*e.g.*, the contractual relationship between Howell and Perdue and Perdue's right to property placed in direct issue by Howell's claims for damages), that must be adjudicated in an Article III court. Adjudicating those rights in an Article I tribunal violates Article III and the separation of powers vesting the federal judicial power exclusively in the judicial branch.

7.      *Third*, the FSMA statutory scheme accords Howell, a private litigant, power to kick out his claims to an Article III district court and elect a jury trial, but without providing any intelligible standard to curb or even guide his discretion. Howell may even do so after an adverse ruling by the ALJ or the Secretary of Labor. By delegating unfettered legislative power to an individual litigant to decide whether his claims should be tried before an Article I ALJ or an Article III district court with the right to a jury trial and full due-process protections unavailable in the OALJ, FSMA violates the nondelegation doctrine of the constitutional separation of powers. *See Jarkesy v. SEC*, 34 F.4th 446, 459-63 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd on other gds. and remanded*, 144 S. Ct. 2117 (2024).

8.      *Fourth*, OALJ's ALJs are unconstitutionally shielded from presidential oversight mandated by the Take Care Clause, U.S. Const. art. II, sec. 2, because they are doubly insulated from the presidential removal power: they can be removed *only* for cause and *only* by the Merit Systems Protection Board ("MSPB"), whose members can be removed *only* for cause by the President. In *Jarkesy I*, the Fifth Circuit held that such double insulation is unconstitutional. *See Jarkesy I*, 34 F.4th at 463-65.

9.      *Fifth*, the OALJ proceedings violate due process because they lack basic procedural protections, such as the right to subpoena third parties for testimony and mandatory application of the Federal Rules of Evidence, and because they unfairly disadvantage Perdue by, *inter alia*, giving kickout rights to Howell and not to Perdue and allowing DOL to participate in multiple capacities such as adjudicator and prosecutor.

10.     This case is closely related and parallel to another action recently filed by Perdue in this Court, *Perdue Farms Inc. v. Su, et al.*, E.D.N.C. Case No. 5:24-cv-00477-BO (the "First USDCT Action"). That action addresses DOL administrative proceedings brought by a different

4

farmer, Craig Watts, against Perdue, addressing nearly identical retaliation claims under FSMA (the "Watts Administrative Proceedings"). The two sets of administrative proceedings are identical in nearly all material respects, including assignment to the same ALJ.

11.     Perdue challenged the constitutionality of the Watts Administrative Proceedings in light of *Jarkesy*. ALJ Kultgen refused to hear Perdue's constitutional challenges, ruling that, as an ALJ, she "lacks the power and authority to decide constitutional questions." Facing constitutionally infirm administrative proceedings, presided over by an ALJ who refuses to even consider their constitutionality, Perdue brought the First USDCT Action in this Court to halt the proceedings.

12.     Howell's claims against Perdue mirror Watts' claims against Perdue. As both cases bring FSMA claims for compensatory damages and have been assigned to the same ALJ, the same constitutional violations arise in both administrative proceedings. All of the constitutional claims brought in the First USDCT Action are brought here.

13.     The *Jarkesy* decisions and another recent Supreme Court ruling, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), have brought these decisions to a head. *Axon* holds that Perdue's constitutional claims against the DOL proceedings should be adjudicated by this Court, even while those proceedings are pending in the OALJ. Specifically, it held that parallel challenges to the constitutional authority of SEC and FTC ALJs are entitled to immediate "here-and-now" adjudication and, where appropriate, injunctive relief from an Article III district court. *Id.* at 195. Under *Axon* as applied here, the district court should take swift action to prevent "here-and-now" injury by averting unconstitutional administrative enforcement proceedings without waiting for completion of the administrative process and limited judicial review by a circuit court of appeals.

5

14.     Perdue sits in the same precarious shoes as did the respective plaintiffs in *Axon*—facing an imminent unconstitutional administrative adjudication of claims against it that belong in an Article III court. And its constitutional deprivations plainly echo those brought in *Jarkesy*. To prevent the acute harm from being required to endure administrative proceedings that are facially and irreparably unconstitutional, this Court should preliminarily and permanently enjoin the proceedings, declare further proceedings unlawful, instruct the ALJ to dismiss the case, and grant such other relief as this Court deems necessary or proper.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the United States Constitution as applied to a federal statute, FSMA, and seeks relief against officers of the United States. *Axon* applied a three-part test to establish this Court's subject matter jurisdiction over Perdue's constitutional claims. *First*, "could 'precluding district court jurisdiction foreclose all meaningful judicial review' of the claim?" 598 U.S. at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)). *Second*, "is the claim 'wholly collateral' to the statute's review provisions?" *Id*. *Third*, "is the claim 'outside the agency's expertise'?" *Id.* As *Axon* explains, "when the answer to all three questions is yes, we presume that Congress does not intend to limit jurisdiction." *Id.*

16.     Here, Perdue's constitutional challenges satisfy all three *Axon* jurisdiction factors. *First*, Perdue is challenging the unconstitutional structure of the Pending Administrative Proceedings, not the remedies being sought therein, so the harm from having to adjudicate in a structurally unconstitutional forum is not remediable afterwards. *See id.* at 191 ("[B]eing subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to remedy once the proceeding is over."). As in *Axon*, this no different than a right "not to stand trial" that is

"effectively lost" if review is deferred until after trial. *Id. Second*, Perdue's constitutional challenges to the ALJ's authority are entirely collateral to the merits of Howell's FSMA claims against Perdue. *Id.* at 193. *Third*, the ALJ expressly ruled that Perdue's constitutional challenge is beyond the OALJ's expertise and thus declined to consider any challenge to its authority.

17. This Court has the authority to grant injunctive and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and its inherent equitable powers.

18. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B). The individual governmental Defendants are acting in their official capacity as officers of an agency of the United States, and the federal agencies exercise authority in this District. A substantial part of the events or omissions giving rise to Perdue's claims occurred within this District. Howell's farm is located in Fairmont, North Carolina, within this District, and most of the pertinent facts and events at issue in the administrative action took place there. ALJ Kultgen has scheduled the evidentiary hearing on the merits of Howell's claims to be held in Fayetteville, North Carolina, located within this District.

## **PARTIES**

19. Plaintiff Perdue is a privately held Maryland corporation with its principal place of business in Salisbury, Maryland. Perdue is an integrated poultry producer engaged in business throughout the United States. It maintains multiple facilities in North Carolina and contracts with independent chicken growers in North Carolina and in other states.

20. Defendant Julie Su is the Acting Secretary of Labor. She is statutorily responsible for investigating and adjudicating complaints filed pursuant to the FSMA. She is sued in her official capacity.

7

21.     Defendant Pamela Kultgen is the ALJ presiding over *Howell v. Perdue Farms Inc.*, No. 2022-FDA-00004 pending before the DOL's OALJ. She is sued in her official capacity.

22.     DOL is an agency of the federal government that, among other things, is statutorily tasked with investigating and adjudicating complaints filed pursuant to the FSMA. 21 U.S.C. § 399d(b).

23.     OALJ is responsible for adjudicating complaints filed pursuant to the FSMA.

24.     Defendant Rudy Howell resides in North Carolina, in this District. Howell owns and operates the Robert Miller poultry farm in Fairmont, North Carolina.

## **BACKGROUND**

### I.     **Howell's Agreement with Perdue.**

25.     Perdue is an integrated poultry producer engaged in business throughout the United States. *See Bunting v. Perdue, Inc.*, 611 F. Supp. 682, 683-84 (E.D.N.C. 1985) (explaining Perdue's business model). Within this integrated operation, Perdue owns hatcheries and breeding flocks. It delivers its chicks to independent contract growers, such as Howell. Independent growers provide the land, facilities, equipment, and labor to raise the chicks over the course of approximately six to eight weeks, after which Perdue removes the birds from the grower's farm for processing. *See id*.

26.     Howell is a farmer who raised chicks for Perdue under a standard independent-contractor agreement (the "Agreement"), in accordance with applicable federal law and United States Department of Agriculture ("USDA") regulations. *See id*. at 684-85; 9 C.F.R. § 201.100 (USDA regulations governing poultry growing agreements). The Agreement imposed upon Howell, *inter alia,* extensive requirements to protect the well-being of the poultry.

27.     Howell's Agreement with Perdue renewed with each subsequent flock, and either party had the authority to terminate the agreement with ninety-days' notice. The Agreement provided that Perdue would consign chicks and provide feed, fuel, medications, vaccinations, and

other supplies to Howell. In exchange, Howell agreed to feed, water, and care for the consigned chicks until they were removed by Perdue. Typically, chicks would be raised by contractor farmers for several weeks before removal.

28.     For years, Howell complained about the amount and system of compensation he had accepted in his contract with Perdue. Eventually, dissatisfied by the lack of improvement, Howell adopted a strategy utilized by his friend, Craig Watts, also an independent contractor farmer for Perdue. As Perdue has alleged in the Watts Administrative Proceedings and in the First USDCT Action, in 2014, Watts invited an animal rights group to his farm to film his flock of Perdue chicks in sick and inhumane condition, blaming Perdue even though an independent investigation concluded that the chickens' condition was his responsibility alone.

29.     Howell reprised Watts' ploy. In July 2020, Howell invited non-governmental self-proclaimed "public health advocates," as well as a filmmaker from the animal rights organization, We Animals Media ("WAM"), onto his farm in the middle of the COVID-19 pandemic to film a group of chicks in apparent sick and inhumane condition, that he had deliberately let suffer for weeks. Nine days after this visit, WAM posted a description of the visit to Howell's farm, describing chickens in deplorable condition and how Howell had permitted the filmmaker to remove those chicks (one of which died shortly after leaving Howell's farm). A few days later, on July 29, 2020, Howell again permitted non-governmental "public health advocates" and another film crew to access his farm, and the next day, July 30, 2020, WAM posted the video footage of the visit to Howell's farm. Despite the pandemic, it was evident from the video and an ensuing article about the filmmakers' visits that neither Howell nor any of the visitors was masked or followed the CDC recommendations for 6-ft. social distancing, which Perdue's independent growers were requested to follow at that time.

30.     Critically, Howell failed to include any information about any of the visitors on the visitor sheets for his farm. Only one of the visitors even signed in as a visitor. This was in clear violation of Perdue's poultry welfare and bio-security programs and COVID-19 protocols. Allowing non-essential unmasked visitors into the chicken houses recklessly placed at risk Perdue's employees (flock advisors, transporters, and technical employees) and Perdue's flock.

31.     On August 20, 2020, Perdue notified Howell that it was invoking the termination terms of the Agreement, which permitted either party to terminate the Agreement "for any reason" so long as 90 days' prior written notice is provided to the other party. Perdue explained to Howell that, by hosting touring groups of visitors inside his poultry houses, he had violated Perdue's poultry welfare and bio-security programs, as well as the COVID-19 protocols put in place. Rather than place more birds in Howell's facility given his disregard for Perdue's safety protocols, Perdue provided Howell with a lump-sum payment to cover the average profit he could have netted during the 90-day period. In response, Howell filed a retaliation claim in OSHA under FSMA, claiming that Perdue terminated his contract in retaliation for his alleged protected activity.

II.     **The Pending Administrative Proceedings.**

32.     The FSMA provides whistleblower protections for employees of entities engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food that is subject to the Food, Drug, and Cosmetic Act ("FDCA").

33.     On February 11, 2021, Howell filed his OSHA Complaint for alleged unlawful employment retaliation by Perdue against his involvement in the WAM video, as well as his alleged reports of purportedly unsanitary conditions. Colaizzi Decl. Ex. 1, OSHA Compl. ¶¶ 22-36. Howell alleged that, based on his prior alleged "reports" of bad food, high cull rates, non-

functioning scales, and dirty trays, which he subsequently reported to the tour groups he permitted on his farm, he was subjected to adverse employment actions. *See id.* ¶¶ 34-43.

34.     The OSHA Complaint sought compensatory damages for "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation," "compensation for equipment and farm value lost," "lost wages, bonuses, and additional payments," plus "all other relief available at law and equity…." *See id.* § IX, Prayer for Relief ¶¶ C, D, E, & J.

35.     On January 27, 2022, OSHA sent Howell's counsel a letter informing Howell that, as 210 days had passed since Howell had filed his OSHA Complaint, Howell had the right under FSMA to file his claim in federal court. *See* Colaizzi Decl. Ex. 3, OSHA Letter at 1. Its letter reported a conversation with Howell's counsel in which counsel stated that Howell's case would be refiled in federal district court, so OSHA informed Howell that, as a result, it was suspending its investigation. *See id.* OSHA further advised that Howell had thirty days to file his case in federal court. *See id.* Thirty days came and went, and Howell never filed his OSHA Complaint in federal court.

36.     On April 8, 2022, DOL dismissed the OSHA Complaint based upon the findings of an OSHA regional investigator. Colaizzi Decl. Ex. 4, OSHA Findings. DOL determined that there was "no reasonable cause to believe" that Perdue had violated FSMA because (a) Perdue's activity in raising chickens did not fall within the scope of the FDCA, and (b) under the test established in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), and a moderately different "right-to-control" test—both of which DOL uses to determine employee status under whistleblower statutes—Howell was not Perdue's employee. *Id.* at 1-2.

37.     On May 6, 2022, Howell appealed OSHA's findings to the OALJ and filed an amended ("restated") complaint. *See* Colaizzi Decl. Ex. 5, Howell OSHA Objs. and Restated

Complaint (the "Restated Complaint"). His Restated Complaint attempted to align, at least in part, with a supplemental complaint filed by Watts in the Watts Administrative Proceedings. It sought the same compensatory damages as before, namely "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation," "compensation for equipment and farm value lost," "lost wages, bonuses, and additional payments," plus "all other relief available at law and equity…." *See id.* § IX, Prayer for Relief ¶¶ C, D, E, & J.

38.     Perdue moved to dismiss Howell's Restated Complaint because Howell was not an "employee" under FSMA, Howell had failed to "blow the whistle" about animal feed per FSMA's requirements, and Howell had failed to allege any act of retaliation by Perdue. On December 14, 2022,  ALJ Kultgen denied Perdue's motion. Colaizzi Decl. Ex. 6, OALJ Dec. and Order.

39.     Discovery ensued. A five-day merits hearing in the Pending Administrative Proceedings was scheduled to commence on March 17, 2025, but Perdue and Howell moved to extend the deadlines in light of this impending action and accompanying motion for preliminary injunction.  On September 25, 2024, ALJ Kultgen amended the scheduling order and rescheduled the hearing to allow this Court an opportunity to consider whether to issue a preliminary injunction. *See* Colaizzi Decl. Ex. 7, Scheduling Order (September 25, 2024).  Pursuant to the ALJ's latest scheduling order, discovery is set to close on March 7, 2025, and a multi-day merits hearing is scheduled to commence on June 23, 2025 in Fayetteville, North Carolina. *Id*.

### III.     The Watts Administrative Proceedings.

40.     Apart from some factual variations, the Pending Administrative Proceedings are substantively identical to the Watts Administrative Proceedings in all material respects relating to the constitutional issues raised in this action and in the First USDCT Action.

41.     The Watts Administrative Proceedings concerned a similar dispute between Perdue and another one of its independent contractors, Craig Watts, who owns and operates farms in North Carolina and raises chickens for Perdue as an independent contractor, just like Howell. Watts' dispute with Perdue antedates Howell's dispute with Perdue, and Watts engaged in a similar scheme of raising a flock in deplorable condition and then inviting an animal rights group onto his farm to tape and publicize the results. After Perdue took modest remedial action, Watts, just like Howell, alleged retaliation by Perdue in violation of FSMA's whistleblower activities on his farms.

42.     Perdue attempted to take third-party discovery from the animal rights group and others regarding the visit and the preparation of the video taken of the condition of the chicks on Watts' farm. *See* Colaizzi Decl. Ex. 2, First USDCT Action Compl. ¶ 41. ALJ Kultgen quashed Perdue's request for third-party subpoenas, ruling that DOL's statutory procedures do not provide ALJs with authority to issue subpoenas. *Id.* Perdue moved for reconsideration, explaining that the lack of discovery violated due process, and, in the alternative, requested leave for interlocutory appeal, but ALJ Kultgen denied this motion as well. *Id.*

43.     In both administrative proceedings:

- Complainants seek legal remedies (*i.e.*, compensatory damages) for Perdue's alleged violations of the FSMA.

- Complainants have elected to adjudicate their FSMA claims in an administrative proceeding before the OALJ and have not (yet) kicked them out to an Article III court.

- ALJ Kultgen is presiding, and the same attorneys represent Howell and Watts.

- To mount a proper defense against these claims, Perdue needs third-party subpoenas to obtain discovery and evidence regarding the visits made to the farms by the animal rights and/or "public health advocates" and their video footage.

## IV.     *Jarkesy I* and *II*.

44.     On June 27, 2024, the Supreme Court issued its landmark ruling in *Jarkesy II*.

13

45.    In light of *Jarkesy II*, on July 19, 2024, Perdue wrote to the ALJ apprising her of the decision and Perdue's intent to move to dismiss for lack of subject-matter jurisdiction and to seek leave to amend its answer based upon *Jarkesy I* and *II*. *See* Colaizzi Decl. Ex. 2, First USDCT Action Compl. ¶ 42. Despite the extraordinary circumstances, the ALJ denied Perdue's request for a temporary stay and further denied Perdue's request to amend its answer to request a jury trial and to add defenses arising under *Jarkesy I* and *II*. She ruled that ALJs "'lack the power and authority to decide constitutional questions" and thus "cannot and will not grant any motion to dismiss on constitutional grounds.'" *Id.* Even though the order denied Perdue's motions before the motion was ever filed, it allowed Perdue to file its motions to preserve Perdue's positions for appellate consideration. *Id.*

46.    On July 29, 2024, Perdue moved to dismiss the Watts Administrative Proceedings for lack of subject-matter jurisdiction based upon *Jarkesy I* and *II* and further moved for leave to amend its answer. *Id.* ¶ 44. On August 8, 2024, ALJ Kultgen denied Perdue's motions to dismiss and for leave to amend, again ruling that she lacked authority to decide constitutional questions and could not grant the requested relief. *Id.* ¶ 45. She did, however, grant the parties' joint request to extend the discovery cut-off and merits hearing date by six months to allow the First USDCT Action to adjudicate Perdue's motion for preliminary injunction.

47.    On August 20, 2024, Perdue filed the First USDCT Action against Acting Secretary Su, ALJ Kultgen, DOL, and the OALJ, along with a motion for preliminary injunction seeking to halt the Watts Administrative Proceedings.

**V.    The Unconstitutionality of the OALJ Proceedings against Perdue.**

48.    The Pending Administrative Proceedings are unconstitutional under *Jarkesy I* and *II*. Even though the OALJ is well aware of the constitutional bars, it declined to act upon them in

14

either the Watts or the Pending Administrative Proceedings because, it says, administrative agencies are powerless to consider their lack of constitutional power to enforce the laws they administer.

49.    The ALJ's refusal to consider whether her proceeding is unconstitutional vividly shows why Article I courts are not proper tribunals to adjudicate claims that sound in law and involve private rights.  By declining to address, let alone apply, clear Supreme Court authority (*Jarkesy II*) holding that the Pending Administrative Proceedings are unconstitutional, the ALJ is knowingly forcing Perdue to submit to an illegal adjudication.

50.    The ALJ proceedings thus are unconstitutional and violate Perdue's rights.

51.    The first reason that the Pending Administrative Proceedings are unconstitutional is that they violate Perdue's Seventh Amendment right to a jury trial. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency[.]" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989). *Jarkesy II* holds that claims like Howell's claims against Perdue, which seek compensatory damages for, *inter alia*, emotional distress, business losses, and backpay, as well as FSMA penalties of attorney's fees and costs, sound in law, not equity, and amount to a suit at common law and entitle Perdue to the protections of the Seventh Amendment. *See Jarkesy II,* 144 S. Ct. at 2128-31. OALJ proceedings do not allow for a jury trial. Allowing the claims to be tried by an ALJ without a jury would thus violate Perdue's constitutional rights and should be enjoined.

52.    The second reason the Pending Administrative Proceedings are unconstitutional is that they violate Article III and thus violate the separation of powers. Article III provides that the judicial power of the United States is vested "in one supreme Court, and in such inferior Courts as

the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. Also pursuant to Article III, this judicial power "extend[s] to all Cases, in Law and Equity, arising under … the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. Congress may not grant judicial power "on entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 484 (2011). The Article III judicial power protects all private rights, such as life, liberty, or property; these may be adjudicated only in Article III courts, and not by administrative agencies. Because lawsuits seeking money damages "implicate the core private right to property[,]" they must be brought in an Article III judicial forum and cannot be heard by an Article I administrative tribunal. *See Axon*, 598 U.S. at 204 (Thomas, J., concurring).

53. The third reason that the ongoing proceedings are unconstitutional is that the ALJ is insulated from the President's supervision by two levels of for-cause removal protection. The Secretary of Labor may remove ALJ Kultgen "only for good cause established and determined by the Merit Systems Protection Board ["MSPB"] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members similarly may be removed by the President only for cause, *i.e.*, they "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This double layer of for-cause removal violates Article II of the Constitution, which grants the power to execute federal law to the President "alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). Under Article II, the President must have adequate "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 514-15 (2010). One layer of insulation from Presidential plenary power is acceptable, but two layers are not. *Id.* at 515; *see also Seila Law*, 591 U.S. at 213. Thus, the double layer of removal protection currently afforded to ALJs in the OALJ

16

does not grant the President removal authority required by Article II and precludes further litigation under that scheme.

54. Perdue has been injured by the lack of proper oversight over the OALJ. The ALJ is presiding over a proceeding that is allegedly illegal without stopping to assess and address its illegality in the face of binding Supreme Court precedent. In the Watts Administrative Action, the ALJ not only refused to consider the constitutionality of the proceedings, but denied leave to allow Perdue to amend its answer to add these constitutional defenses and to request a jury trial. Perdue therefore is directly affected by a lack of proper oversight over the ALJ.

55. The fourth reason that the ongoing proceedings are unconstitutional is that they exceed legislative authority under Article I by violating separation of powers and the nondelegation doctrine. FSMA accords private parties such as Howell unfettered discretion whether to proceed in an Article I court or whether to kickout his claims to an Article III U.S. district court. Indeed, FSMA accords Howell this unilateral kickout power twice, first if OSHA does not reach a final decision on his claims within 210 days of the filing of his complaint, and again within 90 days after the Secretary of Labor renders her final decision in the matter. 21 U.S.C. § 399d(b)(4)(A). Because the federal proceedings are *de novo*, *id.*, this second kickout right gives Howell, but not Perdue, the unfettered right to treat the lengthy administrative process (*i.e.*, the ALJ hearing, ARB review, and final DOL decision) as if it never happened. Once removed to federal court, either party may demand a trial by jury. *Id.* Under the nondelegation doctrine, Congress may not delegate its legislative power to a non-legislative party to determine whether a matter belongs in an Article I or Article III court without providing an "intelligible principle" to guide the exercise of that power. *See Jarkesy I*, 34 F.4th at 459, 462-63. Here, the FSMA provides no such "intelligible principle" and instead allows *a private litigant*, Howell, the unilateral and

17

plenary power to decide whether his claims will be heard in an Article III court, with full due-process protections, and be subject to trial by jury, without affording any such authority to his adversary party, Perdue.

56.     The fifth and final reason that the ongoing proceedings are unconstitutional is that they violate due process. Perdue lacks the right to subpoena third parties for testimony and documents, depriving it of the basic right to discover facts concerning the key evidence in the case. *See Souch v. Califano*, 599 F.2d 577, 580 (4th Cir. 1979) (holding that an ALJ's failure to issue a subpoena for testimony and documents underlying key adverse evidence violates claimant's due process rights). OALJ's ALJs "have broad discretion to limit discovery in order to expedite the hearing." 29 C.F.R. § 1987.107(b). Neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied by the ALJ at the merits hearing. 29 C.F.R. § 1987.107(d). The ALJ has not been confirmed by the U.S. Senate as meeting the high standards expected from an Article III judge to exercise judicial power and preside over a trial. She has ruled that she lacks authority and will not consider fundamental constitutional questions concerning subject-matter jurisdiction, in stark contrast to an Article III court's inherent judicial authority to determine whether actions by Article I officers violate the Constitution. *See Marbury v. Madison*, 5 U.S. 137, 176-78 (1803). As *Marbury* aptly put it, "[t]his is of the very essence of judicial duty." *Id.* at 178.

57.     Each of those violations of fundamental fairness is compounded by DOL's right under its own regulations to join the proceedings at any time and effectively serve as both litigant/prosecutor and adjudicator/ultimate decision-maker in a single matter. Under 29 C.F.R. § 1987.108(a)(1), the Assistant Secretary for OSHA has plenary discretion to "participate at any time at any stage of the proceeding" as either a party or as an amicus curiae, including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement

18

between the parties. Depending on the stage of the proceedings, a settlement between the parties must be approved by OSHA, the ALJ, or the ARB, respectively. 29 C.F.R. § 1987.111(a), (b), & (d). Finally, for good cause or under "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded), both the ALJ and the ARB may waive any rule or regulation governing their respective proceeding. 29 C.F.R. § 1987.115.

58.     Perdue's private adversary, Howell, has unfettered discretion and absolute control over which tribunal will hear his claims. No comparable right extends to Perdue. Adding insult to injury, if he loses in the DOL, Howell has the further right to refile his claims in federal district court for *de novo* proceedings, until 90 days after the Secretary's final ruling, giving him (but not Perdue) an outrageous advantage of testing the Article I waters and then removing the claims to federal court should he ultimately decide that he might fare better if given a second chance by litigating in a different forum.

59.     The Supreme Court has made it perfectly clear that the deprivation of a constitutional right constitutes an irreparable injury, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and that the time to review and resolve such constitutional violations is now. *Axon*, 598 U.S. at 191. *Axon* holds that federal district courts should rule on constitutional challenges to agency enforcement proceedings to prevent "here-and-now" injuries that "cannot be undone" through appellate review, and thus must be ruled upon as they arise. *Id.* Under *Axon*, the proceedings should be enjoined, as appellate review following a final decision by the Secretary cannot remedy the constitutional violations, nor can the unconstitutional nature of the proceedings be severed to redress the injury without affecting the adjudication.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF THE SEVENTH AMENDMENT**
**Against All Defendants**

60.     Perdue re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

61.     The Seventh Amendment entitles parties to a jury trial of claims that are "'legal in nature.'" *Jarkesy II*, 144 S. Ct. at 2128 (citation omitted).

62.     Howell's claims against Perdue are legal in nature because they are akin to an 18th century common-law claim for breach of action or a personal-injury tort claim for damages, and because he seeks compensatory damages, including damages for emotional distress and reputational harm, business losses, and backpay, and penalties under the FSMA for attorney's fees and costs. *See id.* at 2129 (describing "money damages" as a "prototypical common law remedy").

63.     The value in controversy exceeds twenty dollars.

64.     Howell's claims against Perdue seeking a personal award of money damages do not fall within the narrow "public rights" exception to the Seventh Amendment's right to a jury trial. *See id*. at 2131-34.

65.     ALJ Kultgen's impending adjudication of Howell's claims, scheduled to commence in less than nine months, on June 23, 2025, will violate Perdue's Seventh Amendment right to a trial by jury and thereby constitute an irreparable "here-and-now" harm to Perdue.

**COUNT II**

**VIOLATION OF ARTICLE III**
**Against All Defendants**

66.     Perdue re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

67. Because Howell is seeking compensatory damages and penalties, and further seeks to adjudicate the parties' private contract rights, Perdue's private rights are at stake in the Pending Administrative Proceedings.

68. Claims involving private rights cannot be removed from the jurisdiction of the Article III courts. Howell's claims and requested relief address private rights and thus implicate the judicial power, which Article III of the Constitution vests exclusively in the federal courts. By adjudicating the claims before an Article I ALJ and subsequent administrative review and decision, Howell's election to proceed in the OALJ usurps what the Constitution leaves to the exclusive jurisdiction of Article III courts.

69. Howell's claims do not implicate administrative expertise or efficiency. They do not require administrative adjudication, nor are they uniquely suited to administrative adjudication, as similar "actions are commonly considered by federal courts or without the federal government's involvement." *Jarkesy I*, 34 F.4th at 459.

70. Accordingly, ALJ Kultgen and DOL's continued administrative adjudication of Howell's claims violates Article III of the Constitution and constitutes an ongoing irreparable harm to Perdue.

## **COUNT III**

**VIOLATION OF THE PRESIDENT'S REMOVAL AUTHORITY UNDER ARTICLE II**
**Against All Defendants**

71. Perdue re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

72. Article II of the Constitution provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and vests the President with the sole "authority to remove those who assist him." *Free Enter. Fund*, 561 U.S. at 513-14.

21

73.     DOL ALJs are "inferior officers" within the executive branch of the United States subject to the President's removal authority.

74.     The Secretary of Labor may remove ALJ Kultgen "only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a).

75.     MSPB members, in turn, may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

76.     Accordingly, even though she is exercising executive authority, two levels of for-cause removal protections insulate ALJ Kultgen from presidential control, which violates Article II of the Constitution and irreparably harms Perdue.

77.     This violation of Article II is not severable or mitigable. Per *Axon*, it inflicts an actionable "here-and-now" injury.

78.     Perdue is thus entitled to relief "to ensure that the [legal] standards to which [Perdue is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

## COUNT IV

### VIOLATION OF NONDELEGATION DOCTRINE
### AND SEPARATION OF POWERS UNDER ARTICLE I
#### Against All Defendants

79.     Perdue re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

80.     Under the separation of powers required by the Constitution, Congress may delegate legislative authority to an administrative agency only if it provides an "intelligible principle" by which that agency can exercise that power. *See Jarkesy I*, 34 F.4th at 459, 462-63.

22

81.     The FSMA provides no such "intelligible principle." Once 210 days have lapsed since Howell filed his initial complaint, under FSMA, Congress grants to Howell—not even an administrative agency—unfettered discretion to adjudicate his FSMA claims in either an administrative proceeding before the OALJ with up to two further levels of DOL administrative review, or in federal court with a mutual option to elect a trial by jury. That right re-vests for 90 additional days after the Secretary of Labor issues her final decision, when Howell may move his claims to an Article III federal court for *de novo* adjudication—giving him, but not Perdue, the unfettered right to a do-over should he receive an adverse result in the Pending Administrative Proceedings. Despite vesting legislative power in a private party to select between an Article I and an Article III tribunal, Congress failed to provide any standard, guidance, or intelligible principle on how that party should exercise its discretion.

82.     Congress has exceeded its Article I authority by delegating to a third party, in this case a private party (Howell), the power to choose (twice, at separate junctures) whether to keep an action before the DOL or to move it to an Article III court.

83.     Congress's delegation of authority to a private party, unconstrained by an intelligible principle, to decide whether to subject his private dispute with Perdue to administrative adjudication, violates Article I of the Constitution, the separation of powers required by the Constitution, and the nondelegation doctrine limiting congressional authority.

84.     The FSMA statutory scheme constitutes a more egregious violation of the nondelegation doctrine than did the securities laws at issue in *Jarkesy I*. There, the third party was a different government agency, the SEC. Here, Howell is an adverse private-party litigant, who has been vested with unfettered, plenary discretion, without any controlling limit or principle, to deny Perdue its statutory option under the FSMA and constitutional rights under the Seventh

Amendment to have a jury hear and decide its case. In exercising this unfettered power, Howell has a 100% personal financial interest in securing the maximum possible judgment without any accountability to anyone or any guiding intelligible standard to limit his exercise of that authority.

85.     The FSMA's violation of the separation of powers and the nondelegation doctrine thus violates the Constitution and constitutes an ongoing irreparable harm to Perdue.

## COUNT V

**VIOLATION OF THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE**
**Against All Defendants**

86.     Perdue re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

87.     The OALJ's purported lack of statutory power to issue third-party subpoenas facially violates Perdue's due-process rights under the Fifth Amendment and materially impairs Perdue's ability to defend itself in the OALJ proceeding. This harm is especially acute as applied in this case, where Perdue needs third-party subpoenas to investigate key facts in the case—the visits and video footage filmed on Howell's farm that constitute the heart of Howell's retaliation claims against Perdue. Moreover, under DOL regulations, the ALJ has broad discretion to limit discovery in order to expedite the merits hearing.

88.     The acute harm from a lack of basic discovery of documents and testimony about key evidence in the case could be compounded by the inapplicability of the Federal Rules of Evidence, creating substantial uncertainty as to what evidentiary rules will govern the Pending Administrative Proceedings.

89.     If the action had been brought in an Article III court, as is constitutionally required, Perdue would be granted subpoena power and full discovery rights, and would be granted the full constitutional protections afforded by Article III courts.

90.     Due process is denied when an ALJ relies upon certain evidence as the basis for their decision yet denies a request to subpoena documents or testimony directly related to that evidence and potentially undermines it. *See Souch v. Califano*, 599 F.2d 577 (4th Cir. 1979).

91.     Due process is further denied by the statutory scheme in FSMA, which accords an adverse private party, Howell, unfettered discretion to control whether Purdue can adjudicate its defenses in an Article III court and try them before a jury. FSMA even provides Howell—but not Perdue—the right to redo the case in an Article III federal court should he lose in the DOL.

92.     Because FSMA authorizes Howell, a private third-party adverse actor, to choose whether Perdue is afforded the protections of an Article III court; whether Perdue is given the opportunity to defend itself in front of a neutral Article III judge who meets constitutional requirements; whether to erase an adverse result in the DOL by moving his claims to federal court for *de novo* review; and whether or not Perdue can access its Seventh Amendment right to a jury trial, the Pending Administrative Proceedings violate Perdue's due-process rights by implicating fundamental questions of fairness.

93.     FSMA also accords DOL a right to participate at any time and then become both prosecutor and adjudicator, including the rights to petition for review of ALJ orders and to approve or disapprove of settlements between the parties. By allowing DOL to participate in multiple roles, the statutory scheme violates Perdue's due-process rights to a fair and impartial adjudicator.

94.     The ALJ's prior ruling in *Watts* that she lacks any authority to consider constitutional challenges to her authority further violates Perdue's due-process rights, as it deprives Perdue of an adjudicator who can fulfill "the very essence of judicial duty." *Marbury*, 5 U.S. at 178. Requiring a litigant to endure years of illegal, unconstitutional litigation because the tribunal

declares that it lacks power to halt its own extra-jurisdictional proceedings is fundamentally unfair and thus violates due process.

95.     This one-sided, fundamentally unfair scheme is inherent in the underlying proceedings and thus constitutes an ongoing irreparable harm to Perdue and should be enjoined.

## **<u>PRAYER FOR RELIEF</u>**

For these reasons, Perdue respectfully requests that this Court:

1.  Enjoin the governmental Defendants from continuing the pending ALJ proceedings against Perdue;

2.  Declare that the Pending Administrative Proceedings against Perdue are unlawful and that the governmental Defendants may not proceed with such proceedings;

3.  Award such other and further relief as this Court may deem just and proper, including but not limited to reasonable attorney's fees and costs.

Dated: October 18, 2024                    Respectfully submitted,


_____*/s/Margaret Santen*_____
Margaret Santen
N.C. Bar No. 52927
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
704-405-3119
maggie.santen@ogletree.com

Vanessa N. Garrido
N.C. Bar No. 53470
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road, Suite 600
Raleigh, NC 27615
919-789-3194
vanessa.garrido@ogletree.com

*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

26

Roger A. Colaizzi (notice of special appearance to be filed)
Kristin M. Koger (notice of special appearance to be filed)
Venable LLP
600 Massachusetts Ave., N.W.
Washington, DC 20001
202-344-4000
202-344-8300 (fax)
rcolaizzi@venable.com
kmkoger@venable.com

Mitchell Y. Mirviss (notice of special appearance to be filed)
Venable LLP
750 E. Pratt St., Suite 900
Baltimore, MD 21202
410-244-7400
410-244-7742 (fax)
mymirviss@venable.com

*Counsel for Plaintiff Perdue Farms Inc.*