## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **PERDUE FARMS INC.,** | |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| **JULIE SU**, in her official capacity as Acting Secretary of the U.S. Department of Labor, et al., | |
| Defendants. | |

## PLAINTIFF PERDUE FARMS INC.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiff Perdue Farms Inc. ("Perdue") respectfully moves this court for a preliminary injunction enjoining ongoing unconstitutional administrative proceedings against Perdue to be entered against Defendants Julie Su, in her official capacity as Acting Secretary of the U.S. Department of Labor ("DOL"); Pamela Kultgen, in her official capacity as an Administrative Law Judge ("ALJ") of the Office of Administrative Law Judges ("OALJ") of the U.S. Department of Labor; DOL; and the OALJ.

## NATURE OF THE CASE

Perdue has brought this action seeking declaratory relief and to enjoin four governmental Defendants from conducting an unconstitutional DOL administrative proceeding against Perdue currently pending in the OALJ, *Howell v. Perdue Farms Inc.*, No. 2022-FDA-00004 (the "Pending Administrative Proceedings"). In its recent landmark *Jarkesy* decision, the Supreme Court held that parties like Perdue defending against such claims in an administrative proceeding are entitled to a trial by jury in an Article III court. Here, the Seventh Amendment violation is but one of five fatal constitutional flaws (which also include violations of the separation of powers, the Presidential removal power, the nondelegation doctrine, and due process).

In this motion, Perdue seeks to halt the Pending Administrative Proceedings while this Court considers their constitutionality. Having to defend against claims in a constitutionally illegitimate administrative proceeding is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter. Inc. v. FTC*, 598 U.S. 175, 191-92 (2023). Perdue thus is entitled to preliminary injunctive relief to protect Perdue's constitutional rights and avoid further irreparable harm while this Court adjudicates Perdue's claims.

The Pending Administrative Proceedings concern a dispute between Perdue and one of its independent contractors, Rudy Howell, who owns and operates the Robert Miller poultry farm in

Fairmont, North Carolina. Perdue is an integrated poultry producer engaged in business throughout the United States. Howell raised chickens for Perdue as an independent contractor under a written contract. He commenced the Pending Administrative Proceedings against Perdue for compensatory damages and other relief under the employee-protection (whistleblower) provisions of the Food Safety Modernization Act, 21 U.S.C. § 399d ("FSMA"), which proceedings are currently pending before ALJ Kultgen. A five-day merits hearing was scheduled to commence on March 17, 2025, to be tried without a jury and without the discovery and evidentiary protections of an Article III court, but the ALJ has extended the deadlines in light of this Motion.

Several weeks ago, the Supreme Court held in *SEC v. Jarkesy* that proceedings such as the Pending Administrative Proceedings are unconstitutional because they violate the Seventh Amendment requirement that legal claims and remedies be tried by a jury if requested by a party. 144 S. Ct. 2117 (2024) ("*Jarkesy II*"). In a closely related and parallel administrative proceeding it is defending, captioned *Watts v. Perdue Farms Inc*., No. 2016-FDA-0003 (the "Watts Administrative Proceedings"), Perdue promptly notified the ALJ of the controlling *Jarkesy* ruling. That action addresses DOL administrative proceedings brought by a different farmer, Craig Watts, against Perdue, addressing nearly identical retaliation claims under the FSMA. The Pending Administrative Proceedings are identical to the Watts Administrative Proceedings in nearly all material respects, including assignment to the same ALJ. In the Watts Administrative Proceedings, Perdue requested a briefing schedule for motions to dismiss, for leave to amend its answer, and for a stay of discovery pending a ruling on the motions. Despite the extraordinary circumstances, the ALJ refused to hear Perdue's constitutional challenges, ruling that, as an ALJ, she "lacks the power and authority to decide constitutional questions," and thus "cannot and will not grant any motion to dismiss on constitutional grounds." Facing constitutionally infirm

administrative proceedings, Perdue commenced an action in this Court seeking declaratory and injunctive relief to halt the administrative proceedings, captioned *Perdue Farms Inc. v. Su, et al.*, E.D.N.C. Case No. 5:24-cv-00477-BO (the "First USDCT Action"). The same constitutional violations arise in both administrative proceedings, and the same constitutional claims brought in the First USDCT Action are brought here.

Perdue is entitled to preliminary injunctive relief from this Court. *First*, Perdue is likely to succeed on the merits of its constitutional claims that (1) the Pending Administrative Proceedings violate the Seventh Amendment right to a trial by jury; (2) Howell's underlying claims involve private rights and thus must be adjudicated in an Article III court; (3) the ALJ is doubly insulated from the President's removal authority, violating the Take Care Clause of Article II of the U.S. Constitution; (4) vesting a private litigant, Howell, with plenary power to decide whether the proceedings should be heard in an Article I administrative proceeding or in an Article III court with the right to trial by jury and full due process rights violates the nondelegation doctrine and separation of powers under Article I of the Constitution; and (5) the OALJ's lack of subpoena power and numerous other procedural deficiencies violate the Fifth Amendment's Due Process Clause. *Second*, Perdue will suffer irreparable harm by being compelled to participate in unconstitutional proceedings before an ALJ who will not even consider their unconstitutionality. *Third*, the balance of equities tips in Perdue's favor because Perdue is being stripped of its constitutional rights while Defendants stand to lose nothing. Because all three factors weigh strongly in favor of relief, this Court should grant this Motion.

## STATEMENT OF FACTS

Howell commenced the Pending Administrative Proceedings on February 11, 2021 by filing a whistleblower complaint against Perdue with DOL's Occupational Safety and Health Administration ("OSHA"), alleging retaliation by Perdue in violation of the FSMA. Compl. ¶ 3.

In July 2020, Howell invited non-governmental self-proclaimed "public health advocates" and their film crew onto his farms in order to film the chicks raised by Howell, in violation of the Perdue's poultry welfare and bio-security programs, as well as Covid-19 protocols. *Id.* ¶ 29. After Perdue learned of Howell's violations, it took remedial action by terminating its contract with Howell. Specifically, on August 20, 2020, Perdue notified Howell that it was invoking the termination terms of the Agreement, which permitted either party to terminate the Agreement "for any reason" so long as 90 days' prior written notice is provided to the other party. *Id.* ¶ 31. Perdue explained to Howell that, by hosting touring groups of visitors inside his poultry houses, he had violated Perdue's poultry welfare and bio-security programs, as well as the Covid-19 protocols put in place. *Id.*

In response to Perdue's termination of the parties' agreement, Howell commenced the Pending Administrative Proceedings. On February 11, 2021, Howell filed a complaint against Perdue (the "OSHA Complaint") with DOL's Occupational Safety and Health Administration ("OSHA"), alleging that Perdue's termination of the parties' agreement based on Howell's involvement in the purported public health advocate's videos, as well as his alleged reports of purportedly unsanitary conditions, constituted an unlawful employment retaliation. *Id.* ¶ 33. The OSHA Complaint sought compensatory damages for "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation," "compensation for equipment and farm value lost," "lost wages, bonuses, and additional payments," plus "all other relief available at law and equity…." *See id.* ¶ 34 (citing OSHA Compl. § IX, Prayer for Relief ¶¶ C, D, E, & J). OSHA did not reach a final decision of Howell's claims within 210 days of filing the OSHA Complaint, and Howell elected not to exercise his statutory right to remove the case to federal court. *See id.* ¶ 35.

An OSHA regional investigator reviewed Howell's OSHA Complaint and, in April 2022, found that Howell's claims of retaliation under the FSMA lacked merit and dismissed Howell's complaint. *Id.* ¶ 36. In May 2022, Howell appealed the OSHA's findings to the OALJ and filed an amended ("restated") complaint (the "Restated Complaint"). *Id.* ¶ 37. His Restated Complaint attempted to align, at least in part, with a supplemental complaint filed by Watts in the Watts Administrative Proceedings. It sought the same compensatory damages as before, namely, "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation," "compensation for equipment and farm value lost," "lost wages, bonuses, and additional payments," plus "all other relief available at law and equity…." *Id.* (citing Restated Compl. § IX, Prayer for Relief ¶¶ C, D, E, & J). Perdue moved to dismiss Howell's Restated Complaint, but the ALJ denied Perdue's motion. *Id.* ¶ 38.

A hearing on the merits is set to commence on June 23, 2025. Inter-party discovery is underway and is set to conclude on March 7, 2025. *Id.* ¶ 39. ALJ Kultgen has demonstrated that she will not allow Perdue to issue third-party discovery. In the Watts Administrative Proceedings, Perdue attempted to take third-party discovery from the relevant animal rights group and others regarding their visit to Watts' farm and the preparation of the videos taken of the condition of the chicks on Watts' farm. *See* Colaizzi Decl. Ex. 2, First USDCT Act. Compl. ¶ 41. ALJ Kultgen quashed Perdue's request for third-party subpoenas, ruling that DOL's statutory procedures do not provide ALJs with authority to issue subpoenas. *Id.* Perdue moved for reconsideration, explaining that the lack of discovery violated due process, and, in the alternative, requested leave for interlocutory appeal, but ALJ Kultgen denied this motion as well. *Id.*

The lack of subpoena power is but one aspect of the inferior rights in the OALJ. Its ALJs "have broad discretion to limit discovery in order to expedite the hearing," 29 C.F.R.

§ 1987.107(b), so Perdue does not know what discovery it may pursue in mounting its defense. Similarly, neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied by the ALJ at the merits hearing, 29 C.F.R. § 1987.107(d), creating substantial uncertainty as to what evidentiary rules will govern. Compounding this uncertainty, DOL's regulations go so far as to provide that, for good cause or under "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded), both the ALJ and DOL's internal review panel that reviews OALJ decisions, the Administrative Review Board ("ARB"), may waive any rule or regulation governing their respective proceeding. 29 C.F.R. § 1987.115. Thus, the ALJ is not legally bound by *any* procedural rule.

The OALJ's limited discovery and lax procedures are amplified by DOL's potential dual role as both adjudicator and participant/prosecutor. Under FSMA and DOL's implementing regulations, the Pending Administrative Proceedings have several features that potentially tilt the proceedings toward one litigant's side. DOL's regulations confer on DOL the unqualified right to join the proceedings at any time and effectively serve as both litigant/prosecutor and adjudicator/ultimate decision-maker in this single matter. *See* 29 C.F.R. § 1987.108(a)(1) (providing the Assistant Secretary for OSHA with plenary discretion to "participate … at any time at any stage of the proceeding" as either a party or as amicus curiae, including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement between the parties). Depending on the stage of the proceedings, a settlement between the parties must be approved by OSHA, the ALJ, or the ARB, respectively. 29 C.F.R. § 1987.111(a), (b), & (d). DOL thus has unlimited power to turn the Administrative Proceedings into a one-sided affair.

On June 27, 2024, the Supreme Court issued *Jarkesy II*. *Jarkesy II* definitively holds that Article I administrative law judges cannot adjudicate *legal* claims and remedies, *i.e.*, claims arising

at law like Howell's FSMA claims in the Pending Administrative Proceedings, because the Seventh Amendment requires that they be tried by a jury if so requested. *Jarkesy II*, 144 S. Ct. at 2127-28 (holding that an SEC ALJ cannot adjudicate securities-fraud enforcement claims brought by the SEC because those claims sound in law and, under the Seventh Amendment, are triable by jury). Notably, the Supreme Court considered but did not disturb rulings by the Fifth Circuit that (i) SEC ALJs violate Article II's Take Care Clause because the ALJs are doubly insulated from the President's removal power; and (ii) the SEC's broad discretion under the securities statutes to proceed in either an Article I or Article III tribunal violates the nondelegation doctrine and separation of powers because Congress did not provide any intelligible principle to guide that election. *See Jarkesy v. SEC*, 34 F.4th 446, 459-63, 463-65 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd on other gds. and remanded*, 144 S. Ct. 2117 (2024).

In light of *Jarkesy II*, Perdue unsuccessfully attempted to dispose of the Watts Administrative Proceedings through the OALJ in those proceedings. Specifically, on July 19, 2024, Perdue wrote to the ALJ apprising her of the decision and Perdue's intent to move to dismiss for lack of subject-matter jurisdiction and to seek leave to amend its answer based upon *Jarkesy I* and *II*. *See* Colaizzi Decl. Ex. 2, First USDCT Act. Compl. ¶ 42. Despite the extraordinary circumstances, the ALJ denied Perdue's request for a temporary stay and further denied Perdue's request to amend its answer to request a jury trial and to add defenses arising under *Jarkesy I* and *II*. She ruled that ALJs "'lack the power and authority to decide constitutional questions" and thus "cannot and will not grant any motion to dismiss on constitutional grounds.'" *Id.* Even though the order denied Perdue's motions before the motion was ever filed, it allowed Perdue to file its motions to preserve Perdue's positions for appellate consideration.

On July 29, 2024, Perdue moved to dismiss the Watts Administrative Proceedings for lack of subject-matter jurisdiction based upon *Jarkesy I* and *II*, and further moved for leave to amend its answer. *Id.* ¶ 44. On August 8, 2024, ALJ Kultgen denied Perdue's motions to dismiss and for leave to amend, again ruling that she lacked authority to decide constitutional questions and could not grant the requested relief. *Id.* ¶ 45. She did, however, grant the parties' joint request to extend the discovery cut-off and merits hearing date by six months to allow the First USDCT Action to adjudicate Perdue's motion for preliminary injunction.

On August 20, 2024, Perdue filed the First USDCT Action against Acting Secretary Su, ALJ Kultgen, DOL, and the OALJ, along with a motion for preliminary injunction seeking to halt the Watts Administrative Proceedings. *See id.*

In this Action, Perdue's Complaint seeks relief identical to that sought by Perdue in the First USDCT Action, namely, a declaration that the Pending Administrative Proceedings violate: (1) the Seventh Amendment right to jury trial (Count I); (2) Article III of the Constitution, where judicial power is solely vested, by using an Article I tribunal to adjudicate private rights (Count II); (3) the Take Care Clause in Article II of the Constitution, by impeding the President's removal power over DOL ALJs (Count III); (4) the nondelegation doctrine and the separation of powers, by conferring a private party, Howell, with plenary and unilateral authority to decide whether the claims will be tried in an Article I or an Article III tribunal without any "intelligible principle" to limit his discretion (Count IV); and (5) the Due Process Clause of the Fifth Amendment, which prohibits the adjudication of rights in a fundamentally unfair proceeding, such as the lack of discovery of key allegations in the case (Count V). Perdue also seeks to enjoin the governmental Defendants from taking further action in the unconstitutional Pending Administrative Proceedings.

**ARGUMENT**

**I.     This Court Has Subject-Matter Jurisdiction over Perdue's Claims.**

Under the Supreme Court's recent decision in *Axon*, this Court has subject-matter jurisdiction over Perdue's challenges to the unconstitutional structure of the Pending Administrative Proceedings. *See* 598 U.S. at 195. *Axon* applied a three-part test to establish this Court's subject matter jurisdiction over Perdue's constitutional claims. *First*, "could 'precluding district court jurisdiction foreclose all meaningful judicial review' of the claim?" 598 U.S. at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)). *Second*, "is the claim 'wholly collateral' to the statute's review provisions?" *Id*. *Third*, "is the claim 'outside the agency's expertise'?" *Id*. As *Axon* explains, "when the answer to all three questions is yes, we presume that Congress does not intend to limit jurisdiction." *Id.*

Here, Perdue's constitutional challenges satisfy all three *Axon* jurisdiction factors. *First*, Perdue is challenging the unconstitutional structure of the Pending Administrative Proceedings, not the remedies being sought therein, so the harm from having to adjudicate in a structurally unconstitutional forum is not remediable afterwards. *See id.* at 191 ("[B]eing subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to remedy once the proceeding is over."). As in *Axon*, this no different than a right "not to stand trial" that is "effectively lost" if review is deferred until after trial. *Id. Second*, Perdue's constitutional challenges to the ALJ's authority are entirely collateral to the merits of Howell's FSMA claims against Perdue. *Id.* at 193. *Third*, the ALJ expressly ruled that Perdue's constitutional challenge is beyond the OALJ's expertise and thus declined to consider any challenge to its authority. Therefore, this Court has jurisdiction to address Perdue's constitutional challenges to the Pending Administrative Proceedings.

9

## II.  __Perdue Is Entitled to a Preliminary Injunction.__

To obtain preliminary injunctive relief, Perdue must show "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  When the government is the defendant, as here, the third and fourth elements merge.  *Id.* at 368.  Where there is a "likely constitutional violation, the irreparable harm factor is satisfied and the remaining two factors "favor[]" a preliminary injunction.  *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) (reversing denial of preliminary injunction).  Each of these factors weighs in favor of a preliminary injunction here.  The Pending Administrative Proceedings should be preliminarily enjoined to avoid the immediate and irreparable harm from being subjected to unconstitutional adjudication before this Court has had a chance to decide Perdue's constitutional challenges.

### A.  __Perdue Has a Substantial Likelihood of Success on the Merits.__

Both the law and the facts overwhelmingly support Perdue's five constitutional challenges, showing much more than the required substantial likelihood of success for at least one claim.[1]

#### 1.  __Perdue Likely Will Succeed on Its Seventh Amendment Claim (Count I)__.

Perdue is highly likely to succeed on its claim that the Pending Administrative Proceedings deprive Perdue of its Seventh Amendment right to a jury trial.

---

[1] Although Perdue will likely succeed on each of its constitutional claims, injunctive relief should be granted if Perdue establishes a likelihood on *any* of the claims.  *See, e.g.*, *Roe v. Dep't of Def.*, 947 F.3d 207, 234 (4th Cir. 2020) (granting preliminary injunction where "[p]laintiffs have demonstrated a likelihood of success of the merits of at least one claim"); *League of Women Voters v. N.C.*, 769 F.3d 224, 237-38 (4th Cir. 2014) (granting preliminary injunction where plaintiffs were likely to succeed on one claim, as plaintiffs need not establish likelihood of success on all claims).

The FSMA itself provides that Howell's whistleblower claims are triable by jury. Under FSMA, complainants may kickout their claims to a federal district court for adjudication if either OSHA does not provide an initial decision within 210 days of the filing of the complaint, or again within 90 days after the Secretary of Labor renders her final decision in the matter. 21 U.S.C. § 399d(b)(4)(A). If the complainant files a federal action, *either party may elect a jury trial*. *Id.* Thus, Congress itself has determined that Howell's whistleblower rights and remedies are triable by a jury and thus are legal in nature, which, per *Jarkesy II*, triggers Seventh Amendment protection. That fact alone should settle the question. Congress has spoken.[2]

But even if a jury-trial right were not expressly included in the FSMA, *Jarkesy II* resolves any question that the traditional test for applying the Seventh Amendment requires a jury trial of Howell's claims. A two-part test, followed by a narrow exception, applies: (1) whether the claims have a late-18th century English common-law analogue; (2) more importantly, whether the requested remedies sound primarily in law or equity; and (3) if the two-part test is satisfied and the claims are deemed legal, whether the claim falls within a limited "public right" exception for a class of cases that are so inherently public in nature that Congress may assign them for special treatment by an Article I forum. *See Jarkesy II*, 144 S. Ct. at 2128-34. Howell's claims clearly satisfy the two-part test, and no public-right exception applies. (1) They are analogous to common-law breach-of-contract and tort claims for wrongful discharge. (2) Howell seeks emotional distress, business losses, backpay, and other compensatory damages and penalties that plainly

---

[2] Of course, Congress provided that the claims could be tried administratively as well as judicially. Under *Jarkesy II*, that scheme is no longer permissible. So long as the claims are triable by jury, they must be brought in an Article III court where a jury trial may be elected, without even applying the Seventh Amendment tests. *See Feltner v. Columbia Pics. Television, Inc.*, 523 U.S. 340, 345 (1998) ("Before inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'") (bracketed text in original) (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)). Unlike *Feltner*, FSMA shows clear "'congressional intent to grant ... the right to a jury trial' … on an award of statutory damages." *Id.*

sound in law, not equity. (3) The "public-rights" exception does not apply because Howell's claims are quintessentially private: they seek to enforce rights arising from a contract and to recover compensatory damages. The claims thus amount to a suit at common law and entitle Perdue to a jury trial, *Jarkesy II,* 144 S. Ct. at 2128-31, 2139, rendering the Pending Administrative Proceedings facially unconstitutional.

> a. **Howell's FSMA Claims Are Analogous to 18th Century Common-Law Claims for Breach of Contract and Tort**.

Howell's retaliation claim under the FSMA is analogous to common-law contract and tort claims. He alleges that his employment was terminated due to activity protected under the FSMA. *See generally* Colaizzi Decl. Ex. 5, Restated Compl., ¶ 47; 21 U.S.C. § 399d(a), (b). This claim resembles late 18th-century English common-law breach-of-contract and tort claims for compensatory damages, as reflected by modern-day claims for wrongful discharge and breach of an employment contract. *See, e.g., Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (discussing, in non-Seventh Amendment context, "the common-law background to [] antiretaliation claim," particularly "wrongful discharge of employment").

Some courts analogize to traditional breach-of-contract actions. *See, e.g., Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) ("Lebow's unlawful discharge claim [of retaliation for union organizing prohibited by the Railway Labor Act] is comparable to a common-law action for breach of an employment contract" and is entitled to trial by jury); *Waldrop v. S. Co. Servs., Inc.*, 24 F.3d 152, 156 (11th Cir. 1994) (finding unlawful-discharge claim under Rehabilitation Act analogous to common-law breach-of-contract action). Others hold that a federal statutory claim for monetary damages caused by the violation of a legal duty imposed by the statute should be treated as a tort, irrespective of its novel statutory nature. *See, e.g., Curtis v. Loether*, 415 U.S. 189, 195 (1974) (affirming jury-trial right for fair-housing discrimination claim

under Title VII, reasoning that "[a] damages action under the statute sounds basically in tort," and recognizing that the claim "is analogous to a number of tort actions recognized at common law").

In either case, the fact that Howell's retaliation claim under the FSMA arises through a statutory scheme requiring initial filing in an administrative agency is immaterial. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency[.]" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989) (requiring a jury trial for fraudulent conveyance claims brought in U.S. Bankruptcy Court). What matters is that Howell's FMSA claim has common-law analogues sounding in contract and tort, meeting the first *Jarkesy* element.[3]

### b. Howell Seeks Compensatory Damages and Other Legal Relief.

The second prong of the test, whether the requested relief is legal or equitable, is much "more important." *Jarkesy II*, 144 S. Ct. at 2129. And here, almost all of Howell's requested remedies are legal in nature, a fact that, as in *Jarkesy II*, is "all but dispositive." *Id.*

This Court need look no further than Howell's Restated Complaint in the Pending Administrative Proceedings, which seeks "damages for pain, suffering, mental anguish, and injury to [Howell's] career and reputation." Colaizzi Decl. Ex. 5, Restated Compl. § IX, Prayer for Relief ¶ E. Damages for emotional distress, lost enjoyment of life, and reputational harm are quintessential legal compensatory damages, no different from those available in tort. They are triable by jury under settled Seventh Amendment jurisprudence. *See, e.g.*, *Jarkesy II*, 144 S. Ct.

---

[3] The Seventh Amendment's reference to actions at "common law" includes statutes. *See Jarkesy II*, 144 S. Ct. at 2128 (explaining that the Amendment's reference to "common law" was "in contradistinction to equity, and admiralty, and maritime jurisprudence," so "[t]he Amendment therefore 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume'") (quoting *Curtis*, 415 U.S. at 194 ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.")).

at 2129 ("While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993))); *Wooddell v. IBEW, Loc. 71*, 502 U.S. 93, 98 (1991)) ("A personal injury action is of course a prototypical example of an action at law, to which the Seventh Amendment applies."). This claim arises from FSMA itself, which allows a court to award "compensation for any special damages," 21 U.S.C. § 399d(b)(4)(B)(iii), a term that courts have held to allow emotional-distress and reputational-harm damages in other schemes.[4]

Howell's request for compensatory damages in the form of "lost wages, bonuses, and additional payments," *see* Colaizzi Decl. Ex. 5, Restated Compl. Art. IX, Prayer for Relief ¶ C, also is a clearly legal remedy. Restitution for lost earnings and compensation is legal, not equitable, where it is "but a free standing claim for money damages" and is not seeking a discrete pool of funds held by defendant that "belong to" the plaintiff. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, 218 n.4 (2002); s*ee also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."); *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 504 (4th Cir. 2023) ("Plaintiffs that seek 'merely personal liability upon the defendants to pay a sum of money' ask for legal, not equitable, relief").

Though the decisions vary depending on the statutory scheme, backpay is typically considered legal, rather than equitable. *See, e.g., Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) ("[T]he remedy of backpay sought in this duty of fair

---

[4] *See, e.g.*, *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 672 (4th Cir. 2015) (finding that "special damages" in the Sarbanes-Oxley whistleblower protections includes emotional distress) (citing, *inter alia*, *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) (finding facts sufficient for jury trial of alleged emotional distress under False Claims Act's provision for "special damages" in similar statutory scheme of whistleblower protections)).

representation action is legal in nature."); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 832-33 (4th Cir. 1994) (recognizing a jury-trial right because "an award in the amount of backpay" under the Rehabilitation Act "would not be characterized as an equitable remedy"); *Pons v. Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977) ("monetary award for back wages is a traditional legal remedy" for an ADEA violation), *aff'd*, 434 U.S. 575 (1978); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 656 (3d Cir. 2007) ("The remedy they seek is thus akin to 'back pay,' which is not an equitable remedy within the meaning of the [ERISA] statute. … 'Back pay claims do not differ remedially from the personal injury claim for lost wages, or the contract claim for past wages due, for example ... [s]o, while reinstatement is clearly equitable as a form of injunctive relief, back pay seems to be just as clearly legal.'" (quoting 2 Dan B. Dobbs, *Law of Remedies* § 6.10(5) at 226 (2d ed. 1993) (footnotes omitted))); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964–65 (9th Cir. 2002) (explaining that backpay under the Family Medical Leave Act is a legal remedy).

In sum, most of the remedies sought by Howell are legal in nature,[5] meeting the second, "more important" prong of the Seventh Amendment's test for the right to trial by jury.

### c. The Public-Rights Exception Does Not Apply.

*Jarkesy II* effectively shuts the door on the third factor—the narrow exception for legal claims that advance a "public right." *See* 144 S. Ct. at 2132 ("If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory"). If the rights at issue are private, *i.e.*, they involve claims commonly litigated by private parties, the exception does not apply. That is the case here: Howell is a private party; his claims involve a dispute over a contract with a private party; and he seeks

---

[5] The FSMA also provides for a "Penalty" of attorneys' fees and costs. 21 U.S.C. § 399d(b)(3)(C). Civil penalties are considered legal for Seventh Amendment purposes. *See Jarkesy II*, 144 S. Ct. at 2129.

remedies that are entirely personal to him without any direct financial benefit to the public. His claims are quintessentially private.

*Jarkesy II* makes clear that the exception does not apply. There, not even the SEC's dual role as prosecutor *and* decisionmaker in adjudicating securities fraud triggered the public-rights exception. *See id.* at 2135. If SEC-brought securities-fraud claims are not public, then surely Howell's claims seeking compensation for emotional distress are not public, either.

### 2. Perdue Likely Will Succeed on Its Article III Claim (Count II).

Perdue also is likely to succeed on its claim that the Pending Administrative Proceedings violate Article III of the Constitution, where judicial power is solely vested, by using an Article I tribunal to adjudicate private rights. The Constitution requires "the judicial power of the United States" to be vested in Article III courts, and Congress may not confer judicial power "on entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 469, 484 (2011). The Article III judicial power protects all private rights, such as life, liberty, or property; these may be adjudicated only in Article III courts, and not by administrative agencies. Pursuant to this fundamental limitation, "cases involving private rights … may not" be removed from Article III courts. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014).

As discussed above, Howell has brought legal claims (wrongful discharge) seeking legal relief (compensatory damages) for alleged violations of essentially private rights. Because lawsuits seeking money damages "implicate the core private right to property[,]" *Axon*, 598 U.S. at 204 (Thomas, J., concurring), they must be brought in an Article III judicial forum and cannot be heard by an Article I administrative tribunal. *Id.* By adjudicating the claims in an Article I administrative agency, the Pending Administrative Proceedings usurp what the Constitution leaves to the exclusive jurisdiction of Article III courts. This is a clear violation of the separation of powers.

16

### 3. Perdue Likely Will Succeed on Its Removal-Power Claim (Count III).

Perdue also is likely to succeed on its claim that the Pending Administrative Proceedings violate Article II's Take Care Clause. *See Jarkesy I*, 34 F.4th at 463-65.

Article II provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. Art. II, § 3, vesting the President with sole "authority to remove those who assist him." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010). The President may not be "restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States[.]" *Id.* at 484. "[S]uch multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Id.*

Here, the OALJ's ALJs are unconstitutionally shielded from presidential oversight because they are doubly insulated from the presidential removal power: they can be removed *only* for cause and *only* by the Merit Systems Protection Board ("MSPB"), whose members can be removed *only* for cause by the President. Specifically, the Secretary of Labor may remove the ALJ "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members may be removed by the President only for cause, *i.e.*, they "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This double layer of for-cause removal violates the Take Care Clause, which vests the removal power with the President "alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). Under Article II, the President must have adequate "authority to remove those who assist him in carrying out his duties," and, although one layer of insulation from Presidential plenary power is acceptable, two layers are not. *Free Enter. Fund*, 561 U.S. at 514-15. *Jarkesy I* held that double insulation of SEC ALJs is unconstitutional, reflecting a Circuit split. *Contrast Jarkesy I*, 34 F.4th at 463-65; *Fleming v. USDA*, 987 F.3d 1093, 1123 (D.C. Cir.

2021) (Rao, J., dissenting), *with Leachco, Inc. v. CPSC*, 103 F.4th 748, 764 (10th Cir. 2024); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021). DOL ALJs lack removal power like SEC ALJs and thus, if *Jarkesy I* is correct, are similarly unconstitutional.

The Fourth Circuit has acknowledged but not yet resolved this circuit split, ruling instead that, when vacatur of an ALJ ruling is sought, challengers must first show specific as-applied injury resulting from the diminished removal power. *See K & R Contractors LLC v. Keene*, 86 F.4th 135, 148-49 (4th Cir. 2023). This case does not involve vacatur, however. Given *Axon*'s holding of a "here-and-now" injury from proceeding before ALJs in violation of the Take Care Clause, *Axon* strongly indicates that *Keene* should not apply where an ongoing injury is occurring.[6] But even if more injury were required, that test is met by the ALJ's refusal to consider the constitutionality of the proceedings.[7] *See Keene*, 86 F.4th at 145 ("each of the three branches of our federal government has an obligation to interpret the Constitution," though agencies lack

---

[6] The Supreme Court has long recognized that violations of separation of powers regarding a removal power constitute actionable "here-and-now" injuries because they create an unnatural imbalance that affects (taints) the decision-making of the official whose decisions are at issue. *See Seila Law*, 591 U.S. at 212 (discussing cases); *Browsher v. Synar*, 478 U.S. 714, 727 n.5 (1986) (explaining that unconstitutional vesting in Congress of power to remove the Comptroller General is a here-and-now injury even if the power has not yet been exercised).

[7] The ALJ erred in ruling that she cannot consider constitutional challenges. *Keene* affirms that agencies have a duty to interpret the Constitution, which should include the power to dismiss a complaint for lack of constitutional jurisdiction, but cannot enjoin enforcement of an unconstitutional statute, which is not at issue. The ALJ ruled that she "lack[s] the power and authority to decide constitutional questions" and thus "cannot and will not grant any motion to dismiss on constitutional grounds" and quoted dicta in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994), that adjudication "'of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.'" Colaizzi Decl. Ex. 17 at 2. She failed to mention *Thunder Basin*'s next sentence, which states, "This rule is not mandatory, however…." *Thunder Basin*, 510 U.S. at 215. Perdue provided extensive briefing to show that her authority does exist, especially after *Thunder Basin*, all of which was ignored in the ALJ's final ruling. *See* Colaizzi Decl. Ex. 18 (quoting, *inter alia*, *Bennett v. SEC*, 844 F.3d 174, 184 (4th Cir. 2016) ("[T]he Supreme Court has similarly rejected the drawing of jurisdictional lines between agencies and federal courts based on the nature of constitutional claims.") (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 16 (2012); *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *7 (4th Cir. Apr. 19, 2022) (affirming that the principle "is not mandatory" and that "where an independent body—here, the [MSPB]—hears constitutional challenges, it makes little sense to hamstring agencies by limiting the scope of arguments they may consider") (internal quotations omitted)).

18

power to enjoin enforcement of unconstitutional statutes). In the Watts Administrative Action, ALJ Kultgen conclusively refused even to consider the constitutionality of the proceedings or to grant leave to allow Perdue amend its answer to add these constitutional defenses and to request a jury trial. In the Pending Administrative Proceedings, ALJ Kultgen is moving forward despite her full awareness of the constitutional defects of the administrative proceeding. Perdue therefore is directly affected by a lack of proper oversight and ability to remove her due to her conduct as the presiding officer over the claims against Perdue.

### 4. Perdue Likely Will Succeed on Its Nondelegation Claim (Count IV).

Perdue also is likely to succeed on its claim that the Pending Administrative Proceedings violate the nondelegation doctrine and separation of powers under Article I of the Constitution.

Under the nondelegation doctrine, Congress may not delegate its legislative power to a non-legislative party to determine whether a matter belongs in an Article I or Article III court without providing an "intelligible principle" to guide the exercise of that power. *See Jarkesy I*, 34 F.4th at 459, 462-63 (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Here, the FSMA provides no such "intelligible principle" and instead allows *a private litigant*, Howell, the unilateral, plenary, and unfettered power to decide whether his claims will be heard in an Article I court, or whether to kickout his claims to an Article III court (with the attendant due-process protections such as third-party subpoena power, the Federal Rules of Evidence, and guarantee of the right to a jury trial), without affording such power to his adversary, Perdue. FSMA accords Howell this unilateral kickout power *twice*, first if OSHA does not reach a final decision on his claims within 210 days of the filing of complaint, and again for 90 additional days after the Secretary of Labor issues her final decision. 21 U.S.C. § 399d(b)(4)(A). Congress failed to provide any standard, guidance, or intelligible principle on how Howell should exercise his discretion. By delegating to a *private* third party (Howell), the power to choose (twice, at separate

junctures) whether to move his claims to an Article III court, Congress exceeded its Article II power.

*Jarkesy I* held that Congress violated the separation of powers by delegating to the SEC "unfettered authority to choose whether to bring enforcement actions in Article III courts or within the agency." 34 F.4th at 459. By giving this authority to a private party, FSMA more egregiously violates the nondelegation doctrine than did the securities laws at issue in *Jarkesy*, where the third party was a government agency (the SEC). It is difficult to imagine a more unfair advantage than allowing the party who allegedly is seeking millions of dollars in damages from another party to select whether the factfinder will be a jury or an ALJ; whether the defendant party will be able to get key discovery from the complainant's principal source(s) of evidence; whether the sitting judge meets constitutional qualifications and has the powers available under Article III; and whether the administrative agency hearing the matter will have the right to engage and participate as prosecuting party if it so elects. It is even more remarkable that FSMA accords that party the same option again, *after* a final decision by the Secretary, effectively giving him, but not his adversary, the right to wipe out an adverse Article I ruling and redo the litigation *de novo* in an Article III court. The lack of any intelligible principle to guide this unfettered discretion violates separation of powers under the basic strictures of the nondelegation doctrine.

### 5. Perdue Is Likely to Succeed on Its Due-Process Claim (Count V).

Finally, Perdue is also likely to succeed on its claim that the Pending Administrative Proceedings violate the Fifth Amendment's Due Process Clause.

To begin, the ALJ ruled in the Watts Administrative Proceedings that she lacks statutory power to issue third-party subpoenas necessary for Perdue to investigate the key evidence in those proceedings: the video footage filmed on Watts' farm that constitutes the heart of Watts' retaliation claims against Perdue. Compl. ¶ 42. Due process is denied when an ALJ relies upon evidence as

the basis for its decision yet denies a request to subpoena documents or testimony directly related to that evidence and potentially undermines it. *See Souch v. Califano*, 599 F.2d 577 (4th Cir. 1979) (holding that an ALJ's failure to issue a subpoena for testimony and documents underlying key adverse evidence violates claimant's due process rights). Whether the ALJ is correct about her limited power is not the issue; the OALJ's purported lack of statutory power to issue third-party subpoenas facially violates Perdue's due-process rights under the Fifth Amendment and materially impairs Perdue's ability to defend itself in the OALJ proceeding. This harm is especially acute as applied in this case, where Perdue needs third-party subpoenas to investigate key facts in the case—the visits and video footage filmed on Howell's farm that constitute the heart of Howell's retaliation claims against Perdue.

The lack of subpoena power compounds other disparities. DOL ALJs have broad discretion to limit discovery. 29 C.F.R. § 1987.107(b). Substantial uncertainty as to what evidentiary rules will control: neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied. 29 C.F.R. § 1987.107(d). Both the ALJ and the ARB have full power to waive any rule or regulation governing their respective proceedings merely upon a finding of good cause or "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded). 29 C.F.R. § 1987.115. The ALJ has ruled that she lacks authority to consider fundamental constitutional questions concerning subject-matter jurisdiction, in stark contrast to an Article III court's inherent judicial authority to determine whether actions by Article I officers violate the Constitution, which *Marbury v. Madison* described as "the very essence of judicial duty." 5 U.S. 137, 178 (1803). Requiring years of illegitimate unconstitutional litigation because the tribunal claims to lack power to halt them is the epitome of unfairness.

These disparities are compounded by DOL's right under its own regulations to join the proceedings and serve as both litigant/prosecutor and adjudicator/ultimate decision-maker. Under 29 C.F.R. § 1987.108(a)(1), the Assistant Secretary for OSHA may "participate as a party or as amicus curiae at any time at any stage of the proceeding," including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement.

FSMA further violates due process by vesting the complainant, but not the respondent, with the right to move the action to federal court and proceed *de novo*. 21 U.S.C. § 399d(b)(4)(A). Even worse, the FSMA provides the complainant, but not his adversary, with the plenary right to do so after a final decision by the Secretary. *Id.* Giving only one party the right to a second bite and a complete do-over after an adverse result is as unfair as it gets.

The cumulative impact of these disparities is not mitigable by eventual limited judicial review in an Article III circuit court of appeals. As *Axon* itself makes clear, defending whistleblower claims without even the elemental power to subpoena evidence is not remediable.

## B. Perdue Will Suffer Irreparable Harm without a Preliminary Injunction.

Perdue will suffer immediate and irreparable harm absent injunctive relief. *See Axon*, 598 U.S. at 191 ("[B]eing subjected to unconstitutional agency authority ... by an unaccountable ALJ ... is a here-and-now injury" that is "***impossible to remedy once the proceeding is over, which is when appellate review kicks in***.") (internal quotation marks omitted, emphasis added). An appellate court "could of course vacate the [agency]'s order[,] [b]ut [a] separation-of-powers claim is not about that order; indeed, [Perdue] would have the same claim[s] [if] it won before the agency." *Id.* As in *Axon*, Perdue's claims here are "about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* "[J]udicial review of [Perdue's]

structural constitutional claims would thus come too late to be meaningful." *Id.* at 175. *Axon* establishes irreparable harm if the Pending Administrative Proceedings are not enjoined.

This result reflects the black-letter rule that *any* deprivation of constitutional rights constitutes an irreparable injury warranting injunctive relief. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (ruling that a loss of constitutionally guaranteed rights "for even minimal periods of time, unquestionably constitutes irreparable injury.").

In addition to the facial harm that Perdue would suffer by undergoing an unconstitutional agency process, the Complaint shows ongoing as-applied harms, such as proceeding to an evidentiary hearing on the merits without the right to discovery on pivotal facts in the case. Engaging in dispositive fact-finding on Howell's allegations without the benefit of full discovery is clear injury. An adverse finding resulting from such a marred process could impact Perdue's reputation and market standing. For these reasons, Perdue's harm from an unconstitutional agency process is immediate and cannot be remedied by an eventual appeal to the Fourth Circuit years down the road following the ALJ adjudication, internal DOL review at the ARB level, and, potentially, further review by the Secretary.

## C. The Balance of the Equities and the Public Interest Favor An Injunction.

When, as here, a constitutional violation is likely, the balance of the equities and the public interest are satisfied because the OALJ and DOL are "in no way harmed by issuance of a preliminary injunction which prevents [them] from" using an adjudication process "likely to be found unconstitutional," and "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *see also Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest."). Conversely, an injunction would not cause substantial harm to others because, "[i]f anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184,

191 (4th Cir. 2013). Because Perdue is likely to succeed on the merits of its constitutional challenges, a preliminary injunction is clearly in the public interest.

To be clear: this Motion asks only to enjoin the Pending Administrative Proceedings pending the Court's determination of Perdue's constitutional challenges to them. Even if the Court ultimately were to rule in Defendants' favor, the Pending Administrative Proceedings could resume without any major disruption. As the Pending Administrative Proceedings have already taken more than three years, a short further delay to decide their constitutionality to address a landmark Supreme Court decision hardly constitutes unacceptable disruption. Perdue thus stands to suffer constitutional deprivation, but Howell and the other Defendants do not stand to lose anything. The balance of equities and public interest point in one direction: granting an injunction so that the Court may decide the constitutional issues that the OALJ will not address.

## CONCLUSION

For the foregoing reasons, Perdue respectfully requests that the Court enter a preliminary injunction to halt the Pending Administrative Proceedings pending its resolution of this action.


Dated: October 18, 2024                    Respectfully submitted,

                                  _/s/Margaret Santen_____
                                  Margaret Santen
                                  N.C. Bar No. 52927
                                  Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
                                  201 South College Street, Suite 2300
                                  Charlotte, NC 28244
                                  704-405-3119
                                  maggie.santen@ogletree.com

                                  Vanessa N. Garrido
                                  N.C. Bar No. 53470
                                  Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
                                  8529 Six Forks Road, Suite 600
                                  Raleigh, NC 27615
                                  919-789-3194
                                  vanessa.garrido@ogletree.com

*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

Roger A. Colaizzi (notice of special appearance  to be filed)
Kristin M. Koger (notice of special appearance to be filed)
Venable LLP
600 Massachusetts Ave., N.W.
Washington, DC 20001
02-344-4000
202-344-8300 (fax)
rcolaizzi@venable.com
kmkoger@venable.com

Mitchell Y. Mirviss (notice of special appearance to be filed)
Venable LLP
750 E. Pratt St., Suite 900
Baltimore, MD 21202
410-244-7400
410-244-7742 (fax)
mymirviss@venable.com

*Counsel for Plaintiff Perdue Farms Inc.*

25